Matter of Traci A. v Maxmillion B. (2024 NY Slip Op 05852)

Matter of Traci A. v Maxmillion B.

2024 NY Slip Op 05852

Decided on November 21, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 21, 2024

CV-22-2285
[*1]In the Matter of Traci A., Respondent,
v
Maxmillion B., Appellant. (And Another Related Proceeding.)

Calendar Date:October 10, 2024

Before:Pritzker, J.P., Reynolds Fitzgerald, Ceresia and Mackey, JJ.

Tully Rinckey PLLC, White Plains (Nancy C. Nissen of counsel), for appellant.
John A. Cirando, Syracuse, for respondent.
Bradley J. Rooke, Broadalbin, attorney for the child.

Pritzker, J.P.
Appeal from an order of the Family Court of Otsego County (John F. Lambert, J.), entered November 3, 2022, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject child (born in 2014). Pursuant to a 2019 order entered upon consent, the parties shared joint legal custody of the child, with the father having primary physical custody and the mother having a schedule of parenting time. In December 2020, the 2019 order was modified, upon the parties' consent, to add a provision entitling the mother to reasonable electronic and phone contact with the child; the custodial arrangement remained unchanged. In January 2022, the mother filed a petition to modify the prior order seeking joint legal and primary physical custody of the child, with primary physical custody to her, which would result in the child relocating to Virginia. The mother claimed that she was concerned for the child's well-being because of, among other things, illicit drug use by the father and the paternal grandmother, who lived with the child and the father. In May 2022, the father filed a petition seeking to modify the prior order to award the father sole legal and physical custody and to restrict the mother's parenting time based upon, among other things, concerns about the lack of consistency in the child's routine and the parties' ability to effectively coparent.
The matter proceeded to a fact-finding hearing and a Lincoln hearing. Additionally, Family Court ordered a Family Ct Act § 1034 investigation. The ensuing report was deemed indicated for inadequate guardianship against the father, the paternal grandmother and the paternal grandfather. Ultimately, following the submission of the report and the aforementioned hearing, Family Court granted the mother's petition and awarded the parties joint legal custody with primary physical custody to the mother and supervised parenting time to the father. In reaching this conclusion, the court highlighted, among other things, testimony from Jessica Regg, an Otsego County Department of Social Services (hereinafter DSS) caseworker regarding positive drug screens of the father and the paternal grandmother, as well as testimony from Brittany Stenz, another caseworker, about her findings in the Family Ct Act § 1034 report. The father appeals.
On appeal, the father limits his contentions to two specific issues, the first of which is Family Court "bas[ing] substantially" its decision on impermissible evidence — specifically, hearsay testimony of Regg regarding a November 2021 positive drug screen of the father and a positive drug screen of the paternal grandmother. At the fact-finding hearing, Regg testified about a November 2021 drug screen, which was ordered as part of a previous Family Ct Act § 1034 investigation, on which the father tested positive [*2]for methamphetamines. The father objected to this testimony, but Family Court overruled the objection subject to corroboration. Later in the direct examination, Regg recounted a conversation with the father in November 2021 about the positive drug screen and how a safety plan was put in place wherein the paternal grandfather was to supervise contact between the father and the child. Regg testified that this plan remained in place until the paternal grandmother tested positive for methamphetamines. At that point in time, the child lived elsewhere until the father had a negative drug screen. The father's attorney objected to the testimony about the paternal grandmother's positive drug test and the court sustained the objection subject to corroboration. During the attorney for the child's cross-examination of Regg, she again testified to the fact that the paternal grandmother tested positive for methamphetamines. That time, the father did not object. Later in the fact-finding hearing, the father testified and confirmed that in November 2021 he had a positive drug screen, which he attributed to having smoked marihuana that was laced with methamphetamines at a friend's house. The father also confirmed Regg's testimony about the safety plan and the paternal grandmother's positive drug screen. Following this hearing, Family Court granted a request by the attorney for the child for an investigation pursuant to Family Ct Act § 1034.
In August 2022, Stenz filed a report on her findings from the § 1034 investigation. In her report, Stenz determined that there was sufficient evidence to indicate the report of inadequate guardianship of the child by the father, paternal grandmother and paternal grandfather. The report noted that the father, paternal grandmother and paternal grandfather all failed to cooperate with DSS and refused multiple requests for random drug screens. Fact-finding continued, during which Stenz recounted conversations she had with the child during her investigation regarding drug use at home. This conversation revealed that the child found a long, thin glass pipe in the home, which the child depicted in a hand-drawn picture. Additionally, Stenz testified that when asked if the child knew what drugs were, the child said yes and then demonstrated by falling to the ground. This same day, Family Court ordered the father to submit to a drug screen, which was positive for amphetamine and methamphetamines.
We do agree with the father that Regg's testimony regarding the November 2021 drug screen results of the father and the subsequent drug screen results of the paternal grandmother was inadmissible hearsay.[FN1] However, we find the error to be harmless given that "the court placed minimal, if any, reliance on those hearsay statements, and the evidence is otherwise sufficient to support the court's determination" (Matter of Higgins v Higgins, 128 AD3d 1396, 1397 [4th Dept 2015]; see Matter of Hughes v Sivertsen, 275 AD2d 414, 414 [2d Dept 2000]). [*3]To that end, it is clear that Family Court put great significance on the father's testimony that he was not currently using intoxicants, which was refuted by the positive court-ordered drug screen. Moreover, while Regg's testimony about the positive drug screens was inadmissible hearsay, the father, during his testimony, admitted that both he and the paternal grandmother had positive drug screens. Thus, the erroneously admitted hearsay testimony "simply restated" what was "established by other evidence introduced at the hearing" (Matter of Thomas v Osborne, 51 AD3d 1064, 1069 [3d Dept 2008]; see generally Matter of Brandon HH. v Megan GG., 214 AD3d 1036, 1037 [3d Dept 2023]). Accordingly, this error does not warrant reversal.[FN2]
The father's remaining contention is that he did not receive effective assistance of counsel because his attorney failed to submit evidence and exhibits on his behalf, challenge procedural irregularities and submit a closing argument. "In order to establish an ineffective assistance of counsel claim, a party must demonstrate that he or she was deprived of meaningful representation as a result of his or her lawyer's deficiencies," (Matter of Laura E. v Matthew E., 226 AD3d 1117, 1118 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Farideh P. v Ahmed Q., 202 AD3d 1391, 1394 [3d Dept 2022], lv denied 38 NY3d 909 [2022], cert denied ___ US ___, 143 S Ct 606 [2023]). Here, the father's attorney cross-examined all witnesses called by the mother, raised several objections over the course of the hearing, properly narrowing the scope of certain testimony, and made a motion to dismiss the petition at the close of the mother's testimony. While the father claims that his attorney failed to call any witnesses or admit any evidence, he fails to state what witnesses or exhibits his attorney should have brought in. Thus, it is impossible to determine whether this evidence would have been favorable to him (see Matter of Bennett v Abbey, 141 AD3d 882, 884 [3d Dept 2016]; Matter of Ysabel M. [Ysdirabellinna L.-Elvis M.], 137 AD3d 1502, 1505 [3d Dept 2016]). The father also cites to his attorney's failure to submit a summation on his behalf, however, none of the parties chose to submit summations. Moreover, an attorney's decision to forego a summation "is not necessarily indicative of ineffective legal representation" (Matter of Bennet v Abbey, 141 AD3d at 884 [internal quotation marks and citation omitted]; see Matter of Carly W. v Mark V., 225 AD3d 984, 987 [3d Dept 2024]). We find the father's remaining claimed deficiencies of his attorney similarly unavailing; therefore, "[u]pon considering the totality of the representation, we cannot conclude that it was anything less than meaningful" (Matter of Jehrica K. v Erin J., 223 AD3d 1079, 1082 [3d Dept 2024] [citations omitted]).
Reynolds Fitzgerald, Ceresia and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: We are unpersuaded by the mother's and the attorney for the child's argument that this testimony fell within a hearsay exception pursuant to Family Ct Act § 1046 (a) (vi), which is limited to corroborated, out-of-court statements made by a subject child regarding allegations of abuse or neglect (see Family Ct Act § 1046 [a] [vi]; Matter of Sarah QQ. v Raymond PP., 210 AD3d 1321, 1322 [3d Dept 2022]).

Footnote 2: The father also contends that Family Court stated in its decision, and therefore improperly relied on, impermissible hearsay by Regg that the father tested positive "on multiple occasions while caring for [the child]." However, Regg did not make such a statement during her testimony. Given that "the court placed minimal, if any, reliance" on this erroneous statement, "and the evidence is otherwise sufficient to support the court's determination" (Matter of Higgins v Higgins, 128 AD3d at 1397; see Matter of Hughes v Sivertsen, 275 AD2d at 414), we find this error to be harmless.